**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | No. 22-04065-01-CR-C-BCW |
| **JONATHAN S. O'DELL**, | |
| Defendant. | |

### UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through R. Matthew Price, United States Attorney for the Western District of Missouri, and undersigned counsel, respectfully submits this sentencing memorandum in the above captioned matter, set for a sentencing hearing on August 26, 2025. For the reasons set forth below, the United States recommends that the Court sentence the defendant, Jonathan S. O'Dell, to a total of 600 months' (50 years') imprisonment and the maximum amount of supervised release to follow. The United States also requests that the Court order the defendant to pay restitution in the amount of $3,717.98 to the Federal Bureau of Investigation ("FBI"), joint and several with his co-defendant, Bryan C. Perry, and $15,516.65 to the Phelps County, Missouri Sheriff's Department.

### I. INTRODUCTION

On August 20, 2022, Bryan C. Perry asked the defendant, Jonathan S. O'Dell, "feel like going to war with border patrol", to which the defendant replied, "yes", "ok", and "I'm in brother." This exchange represented the agreement to enter into a conspiracy to travel to the United States-Mexico border to murder United States Border Patrol ("USBP") agents and immigrants. In

furtherance of that conspiracy, co-defendant Perry attempted to murder FBI agents on October 7, 2022.

The defendant now faces sentencing on charges related to his role in the conspiracy to murder, injure, and assault USBP agents, and the attempted murder of, and assaults of, FBI agents in furtherance of their plans. Specifically, the defendant and Perry conspired to travel to the United States - Mexico border to conduct such murders, along with murders of immigrants, and committed numerous acts in furtherance of their conspiracies, including amassing firearms, ammunition, gas masks, zip ties, medical kits, and body armor, and attempting to recruit other individuals to participate in their plan. Then, when the FBI attempted to stop them before they traveled to the border, Perry donned his body armor and fired 11 shots from a stolen firearm at seven FBI agents, one of the shots striking an FBI armored vehicle just inches from the head of one of the agents.

While in custody awaiting trial, the defendant tunneled through the ceiling of his jail cell into a ventilation shaft and escaped from the Phelps County Jail wearing stolen law enforcement clothing. He then stole a vehicle and led law enforcement on a lengthy and dangerous high-speed chase hundreds of miles away. The defendant endangered himself, civilians and law enforcement through his reckless behavior.

For the reasons set forth below, and under the factors set out in 18 U.S.C. § 3553(a), the United States (also referred to herein as "the Government") respectfully recommends that this Court sentence the defendant to the following terms of imprisonment for each of his convictions:

| | |
|---|---|
| Count 1 – Conspiracy to Murder a Federal Officer and Employee (18 U.S.C. §§ 1117 & 1114) | 30 years |
| Count 2 – Conspiracy to Assault a Federal Officer and Employee (18 U.S.C. §§ 371 & 111(a)(1)) | Five years |

| | |
|---|---|
| Count 3 – Conspiracy to Injure an Officer (18 U.S.C. § 372) | Six years |
| Counts 4-10 – Attempted Murder of a Federal Officer and Employee (18 U.S.C. §§ 1114(a)(3), 1113 & 2) | 20 years |
| Counts 11-17 – Assault of a Federal Officer and Employee with a Deadly or Dangerous Weapon (18 U.S.C. §§ 111(a)(1), (b) & 2) | 20 years |
| Count 18 – Assault of a Federal Officer and Employee That Inflicts Bodily Injury (18 U.S.C. §§ 111(a)(1), (b) & 2) | 20 years |
| Counts 19-20 – Assault of a Federal Officer and Employee That Involves Physical Contact (18 U.S.C. §§ 111(a)(1) & 2) | Eight years |
| Counts 21-34 – Use of a Firearm in Furtherance of a Crime of Violence (18 U.S.C. §§ 924(c)(1)(A)(iii) & 2) | 15 years |
| Count 35 – Depredation of Government Property (18 U.S.C. §§ 1361 & 2) | 10 years |
| Count 42 – Possession of a Firearm While Subject to Court Order of Protection (18 U.SC. § 922(g)(8)) | 15 years |
| Count 43 – Communicating a Threat to Injure (18 U.S.C. § 875(c)) | Five years |
| Count 44 – False Statement (18 U.S.C. § 1001(a)(2)) | Five years |
| Count 45 – Escape from Custody (18 U.S.C. § 751(a)) | Five years |

The United States recommends that the sentences for each of the following convictions run concurrent to one another: Counts 1-3, 4-10, 11-17, 18, 19-20, 35, 42, 43, 44. The United States recommends that the sentence for each of the following convictions run consecutive to each other and to the concurrent counts listed above: Counts 21-34 and 45. The United States recommends that each of these terms of imprisonment be followed by the statutory maximum amount of supervised release for each count, to run concurrent to one another. Further, the United States

respectfully requests that the Court order the defendant to pay restitution in the amount of $3,717.98 to the FBI for the damage Perry caused to the FBI armored vehicle during the attempted murders, joint and several with Perry. The United States also requests that the Court order the defendant to pay restitution in the amount of $15,516.65 to the Phelps County, Missouri Sheriff's Office for the damage he caused during his escape.

The United States' sentencing recommendation is sufficient but not greater than necessary to address the relevant factors represented in 18 U.S.C. § 3553(a). The actions of this domestic terrorist and aspiring mass murderer warrant a 600-month sentence.

## II. PROCEDURAL BACKGROUND

On October 7, 2022, the United States District Court for the Western District of Missouri issued a complaint charging the defendant with communicating a threat in interstate commerce and possession of a firearm while subject to a court order of protection. (D.E. 1.)[1]

On October 18, 2022, a grand jury seated in Jefferson City, Missouri, returned an indictment against Perry and O'Dell charging them with various firearms and threat crimes. (D.E. 16.)

The grand jury returned a superseding indictment on January 17, 2023, which added a forfeiture allegation to the charges from the initial indictment. (D.E. 28.) On May 30, 2023, the grand jury returned a second superseding indictment that added charges against each defendant, including conspiracy to murder a federal officer and employee, conspiracy to assault a federal officer and employee, conspiracy to injure an officer, attempted murder of a federal officer and employee, assault of a federal officer and employee with a deadly or dangerous weapon, assault

---

[1] "D.E." refers to the docket entries of the instant criminal case, case number 22-04065-01/02-CR-C-BCW, and any associated documents.

of a federal officer and employee that inflicts bodily injury, assault of a federal officer and employee that involves physical contact, use of a firearm in furtherance of a crime of violence, and depredation of government property. (D.E. 34.) The grand jury also charged Perry with crimes involving firearms, body armor, explosives, and interstate communication of threats. (D.E. 34.) The grand jury further charged O'Dell with crimes involving interstate communication of threats, firearms, and making a false statement to the FBI. (D.E. 34.) The grand jury returned a third superseding indictment on October 24, 2023, that added an escape from custody charge against O'Dell. (D.E. 48.)

On October 28, 2024, the defendant appeared before this Court and entered a plea of guilty to Counts 42, 44, and 45 of the Third Superseding Indictment, charging him with possession of a firearm while subject to a court order of protection, making a false statement, and escape from custody, respectively. (D.E. 134, 137.) From October 28, 2024, through November 7, 2024, the defendant appeared for jury trial before this Court on the remaining charges; after deliberating for just over two hours, the jury found the defendant guilty on the remaining charges. (D.E. 134-36, 139-44, 147.) O'Dell waived his right to forfeiture by jury, (D.E. 144), and the Court later entered a preliminary order of forfeiture against him, (D.E. 191).

On January 2, 2025, O'Dell filed a motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure, (D.E. 161), which the United States responded in opposition to on May 9, 2025, (D.E. 200). The Court denied O'Dell's motion on July 25, 2025. (D.E. 209.)

The United States Probation Office ("USPO") submitted its draft presentence investigation report on January 6, 2025. Both the United States and the defendant submitted objections to the

5

report which potentially affect the applicable Guidelines range. (PSR Adden.)[2] The United States Probation Officer filed the final presentence investigation report ("PSR") on May 20, 2025, in which he addressed these objections. (D.E. 201.) The PSR calculated the Sentencing Guidelines as a total offense level of 69, to be treated as a level 43. With his Criminal History Category of VI, this calculation results in an applicable Guidelines range of Life imprisonment. The United States concurs with the USPO's calculation. The United States recommends an aggregate sentence of 600 months' imprisonment.

### III. DISCUSSION

Even after *United States v. Booker*, 543 U.S. 220 (2005), sentencing begins with a properly calculated advisory Sentencing Guidelines range, including any applicable departures. *See* United States Sentencing Commission, Guidelines Manual, §1B1.1(a) and (b). The Court then must consider that range, along with all the factors listed in 18 U.S.C. § 3553(a), in arriving at the final sentence. USSG §1.1B1(c).

The Supreme Court has observed that "in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives'." *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)). The Government submits a 600-month sentence is sufficient, but not greater than necessary, to meet the goals outlined in 18 U.S.C. § 3553(a). While 600 months is a significant sentence, given the defendant's history of violent criminal behavior, his plans to commit mass murder, and his part in attempting to murder federal agents, it is a reasonable sentence and is justified under § 3553(a) for the reasons set forth below.

---

[2] "PSR Adden." refers to the presentence investigation report addendum, filed on May 20, 2025.

A.      **Objections to the PSR**

The defendant objects to Count Groups 1-8, Count 19, Counts 21-34, Count 35 and the victim related adjustments. The basis of the defendant's objection is that the Court had not ruled on his motion for judgment of acquittal and that his co-defendant, Perry, was the one who shot at FBI agents. This objection is now moot, since the Court denied the defendant's motion for acquittal on July 25, 2025, (D.E. 209.) As noted in the Court's order, co-defendant Perry's actions in shooting at FBI agents are attributable to the defendant because they were done in furtherance of the conspiracy. *Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946) (holding that each member of a conspiracy may be held vicariously liable for the actions of co-conspirators that are foreseeable in furtherance of the conspiracy.)   Additionally, pursuant to U.S.S.G. §1B1.3 (a)(1)(B), the defendant is accountable not only for his own conduct, but also for any acts and omissions of others engaging in jointly undertaken criminal activity, regardless of whether it was charged as a conspiracy. Due to the nature of the conspiracy, which involved murdering federal agents, Perry's actions on October 7, 2022, were reasonably foreseeable to the defendant. Therefore, the USPO correctly calculated the guidelines for the above-mentioned Counts.

B.      **Application of the § 3553(a) Factors**

   1.      **The History and Characteristics of the Defendant**

The defendant's history and characteristics are the first of the factors enumerated in 18 U.S.C. § 3553(a)(1). Throughout the trial, the defendant portrayed himself to the jury as a non-violent man, a father who cared for his family, and a victim of circumstance. However, the "defendant's criminal record reflects a history of assaultive behavior and protection orders reflect impulse and anger issues" (PSR ¶ 222.) On October 19, 2013, the defendant committed the offense of assault in the third degree in Ray County, Missouri Case No. 13RY-CR00405. The defendant

7

and P.B., were riding horseback and trespassed on the victim's property. The victims reported the defendant withdrew a long rifle from its holster on the horse and laid it across his lap which caused them apprehension of immediate physical injury. Additionally, one of the victims noticed his truck windshield was busted by a blunt object after the defendant and P.B. left the scene. The defendant was ultimately sentenced to 15 days' custody, suspended, and two years' probation (PSR ¶ 190.) While this conviction is a misdemeanor, it shows a pattern of the defendant's use of firearms to intimidate and threaten others. The United States anticipates P.B. will be called to testify and will provide additional details and insight.

At the time the defendant committed the instant offenses, he had multiple violent offenses pending which have yet to be resolved due to the defendant being in federal custody. On March 21, 2019, Ray County Sheriff's deputies responded to a disturbance in progress at the defendant's residence. P.B. had given birth four days prior. P.B. reported she and the defendant had been to dinner with their new baby and the defendant became upset when she brought up their financial situation. P.B. stated the defendant had slammed on the brakes several times while he was driving due to being mad at P.B. P.B. stated she slapped the defendant in the head because their four-day old son was in the vehicle. P.B. stated when they arrived back home, the defendant would not give P.B. their infant telling her he knew how to take care of the baby better than she did. The defendant then grabbed P.B.'s arm, twisted it, and then grabbed her by the throat and pushed her against the window. P.B. stated she asked the defendant to leave, but he would not and instead grabbed her by the throat and strangled her a second time. During the course of the assault, the defendant broke two doors and a chair. P.B. stated she attempted to call 911, but the defendant grabbed the phone, hung up, retrieved his .45 revolver, stated he was going to hit her and left in a vehicle. . P.B. was able to call 911 and advised deputies the defendant was armed with a handgun and left in a red

8

Jeep. When deputies arrived, they saw the defendant's red jeep and removed their weapons. The defendant told the deputies, "F*** you get off my property". The deputies pulled out their taser and pointed it at the defendant's stomach. When asked where the gun was, the defendant pulled his pants down. The defendant was charged in Ray County with one count of domestic assault in the second degree (felony) and one count of domestic assault in the fourth degree (misdemeanor) (PSR ¶ 200.) The defendant was on bond when he committed the instant offenses.

On February 15, 2020, P.B. reported to the Ray County Sheriff's Office that the defendant assaulted her on December 23, 2019. P.B. told law enforcement the defendant strangled her and placed a gun to her head while she was seven months pregnant. P.B. reported her nine-month-old was on the floor during the assault. The United States anticipates P.B. will explain she was hospitalized after this incident due to an unrelated illness which contributed to her delay in reporting. The defendant was charged in Ray County with one count of attempted domestic assault in the first degree (felony), endangering the welfare of a child (felony), domestic assault in the second degree (felony), domestic assault in the third degree (felony), domestic assault in the fourth degree (felony), and kidnapping in the third degree (misdemeanor) (PSR ¶ 201.) The defendant was on bond for this as well when he committed the instant offenses.

During the course of his escape from custody (Count 45), the defendant committed the offenses of tampering with a motor vehicle in the first degree (felony) and resisting arrest (felony) in Ray County, Missouri. After escaping from the Phelps County Jail, the defendant stole a gray Ford F250 truck and drove it to Ray County, Missouri where he ultimately led law enforcement on a dangerous pursuit (PSR ¶ 202.) The defendant's actions show a complete disregard for the law and the safety of others.

On November 22, 2020, the defendant committed the offenses of burglary and stealing a firearm/explosive weapon, both felonies, in case number 21ML-CR00288-01. The defendant unlawfully entered the Rock Island Bar in Lake Ozark, Missouri and stole an AR-15 firearm, AR-15 magazines, and two handguns. The defendant was caught on surveillance footage from a nearby business walking out from behind the business with two handguns, and what appeared to be an upper receiver of an AR-15 wrapped in a jacket. Officers found the defendant at Porkey's strip club in Miller County(PSR ¶ 213.) Officers recovered the stolen firearms from the defendant's father's residence (PSR ¶ 199.) Although the case was dismissed, there is ample evidence the defendant in fact committed these offenses.

The defendant's ex-wife filed for an order of protection in 2017, 2018, 2021, 2022, and 2024. The Court granted a full order of protection on January 31, 2023, and it remained in effect until January 31, 2024. The Court granted another order of protection on June 21, 2024, and it remains in place until June 21, 2026 (PSR ¶¶ 208-212.)

The defendant has been in custody for much of his sons' lives. He assaulted the mother of his children when his oldest son was only four days old and on a separate occasion when P.B. was pregnant with his youngest son while his oldest son was present in the room. The defendant's history and characteristics reveal an impulsive, violent man who has repeatedly physically abused and threatened his ex-wife with a firearm, stolen firearms from a business, and escaped from custody.

2. **The Need to Protect the Public from Future Crimes by the Defendant and the Nature and Circumstances of the Offense**

The need to protect the public from the defendant's own future crimes, 18 U.S.C. § 3553(a)(1)(C), the nature and circumstances of the offenses of conviction, 18 U.S.C.

10

§ 3553(a)(1), as well as the need for the sentence to reflect the seriousness of the offenses, promote respect for the law, and provide just punishment for the offenses, 18 U.S.C. § 3553(a)(2)(A), and the need to deter other criminal conduct, 18 U.S.C. § 3553(a)(2)(B), all weigh in favor of the 600-month sentence recommended by the United States.

In the summer of 2022, the defendant, subject to a full order of protection, conspired with his co-defendant, a convicted felon, to go to war with and murder United States Border Patrol agents, murder immigrants that crossed over the border into the United States, amass weapons, ammunition, and other mass-murder supplies, and recruit other individuals to join their 2nd American Militia.

In September of 2022, the defendant invited Perry to travel from Tennessee to stay with him at his residence in Warsaw, Benton County, Missouri. The defendant was aware of Perry's anti-law enforcement beliefs, knew he was prohibited from possessing firearms, and knew of his intentions to shoot at the FBI should they ever appear at his doorstep. The defendant provided Perry with material support by giving him a place to live, a source of income, and a place to train. After the defendant provided a home-base for their aspiring anti-government militia, the defendant and Perry began ramping up their preparations for carrying out their conspiracy. The defendant and Perry amassed firearms, ammunition, body armor, medical supplies, and created recruitment content for social media.

During communications with an undercover FBI agent, the defendant outlined their plan to travel to the border and murder border patrol agents, even going so far as to state that they could pick up the agent's tactical gear off the ground after they murdered them. The defendant also was in search of night vision goggles as well as other equipment that could be used to carry out their plans. The defendant made it clear that his and Perry's plan to commit mass murder was imminent.

11

As a result, on October 7, 2022, the FBI executed a search warrant at the defendant's residence. The FBI announced their arrival, and Perry donned his tactical vest with body armor, picked up his stolen rifle and fired 11 shots at FBI agents. The defendant shares the responsibility for the attempted murder of multiple FBI agents as it was done in furtherance of their conspiracy.

On September 29, 2023, the defendant escaped from the Phelps County Jail. The defendant ripped the metal railing from the bunk bed in his cell, cut a hole through the ceiling with the bar, climbed into the crawl space between the drop ceiling and the roof, further climbed through a ventilation shaft, exited into a storeroom, changed into jail staff clothing and walked out the front door. The defendant then stole a vehicle and led law enforcement on a high-speed pursuit throughout rural Ray County, Missouri, where his ex-wife resided with his two sons. The defendant's conduct shows him to be an extreme danger to the community, and shows the defendant is capable of carrying out the mass shooting he and Perry were conspiring to commit.

The defendant's conduct in this case shows a complete disregard for public safety and shows him to be a grave risk to the community. A sentence of 600 months' imprisonment adequately addresses the nature and circumstances of the offenses, the seriousness of the offenses, the defendant's role in the offenses, and the need to protect the community.

### 4. The Need to Avoid Unwarranted Sentencing Disparities

Uniformity in sentencing among similarly situated defendants is also an important element of sentencing, 18 U.S.C. § 3553(a)(6), and in general, this factor weighs in favor of a Guidelines-range sentence, since the Court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" when calculating and reviewing the Guidelines range. *Gall v. United States*, 552 U.S. 38, 54 (2007). In this case, the United States is recommending a life sentence for co-defendant Perry. The United States acknowledges Perry was the individual who

12

Case 2:22-cr-04065-BCW   Document 215   Filed 08/15/25   Page 12 of 14

pulled the trigger 11 times while shooting at FBI agents. A sentence of 600 months for the defendant is significant yet addresses his slightly lesser role in the conduct. To avoid sentencing disparity, the United States recommends that the defendant be sentenced to 600 months' imprisonment.

       **5.      Balancing of All § 3553(a) Factors**

A 600-month sentence is significant for any offense. However, given the defendant's history of domestic violence offenses, theft of firearms, his egregious conduct in this case, as well as the need to protect the public, a lengthy prison sentence is demanded.

**C.    Recommended Sentence for Restitution and Monetary Penalties**

Pursuant to 18 U.S.C. § 3663A, restitution in the amount of $3,717.98 should be ordered to be paid to the FBI, joint and severally with co-defendant Perry. Additionally, a restitution amount of $15,516.65 should be ordered to be paid to the Phelps County Sheriff Department for the damaged caused to the Phelps County Jail. Due to the defendant's inability to pay, the Government is not advocating that a fine be imposed. However, the $100 Special Assessment per count is mandatory and, as a result, $3,900 must be paid in full by the defendant no later than the day of sentencing.

## IV.    CONCLUSION

The United States respectfully suggests that an aggregate sentence of 600 months' imprisonment, with the requested restitution and supervised release terms, constitutes a sentence sufficient, but not greater than necessary, to achieve justice.

                                      Respectfully submitted,

                                      **R. Matthew Price**
                                      United States Attorney

                         By     */s/ Ashley S. Turner*

                    **Ashley S. Turner**
                    Assistant United States Attorney
                    Missouri Bar No. 62314

                    */s/ Casey Clark*
                    **Casey Clark**
                    Assistant United States Attorney
                    Missouri Bar No. 57968
                    901 St. Louis Street, Suite 500
                    Springfield, Missouri 65806
                    (417) 831-4406

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was delivered on August 15, 2025, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to current counsel of record.

                    */s/Ashley S. Turner*
                    **Ashley S. Turner**
                    Assistant United States Attorney